UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MECHELLE EVANS,<br><br>　　　　　Plaintiff,<br>vs.<br><br>ENCORE EVENT TECHNOLOGIES, INC.,<br>a Nevada corporation,<br><br>　　　　　Defendant. | Case No.: 2:15-cv-1120-GMN-CWH<br><br>**ORDER** |

　　　　Pending before the Court is Plaintiff Mechelle Evans's ("Plaintiff's") Motion for Partial Summary Judgment. (ECF No. 13).  Defendant Encore Event Technologies, Inc. ("Defendant") filed a Response (ECF No. 19), and Plaintiff filed a Reply (ECF No. 24).

　　　　Also pending before the Court is Defendant's Motion for Summary Judgment (ECF No. 14), to which Plaintiff filed a Response (ECF No. 17), and Defendant filed a Reply (ECF No. 27).[1]

---

[1] In support of Defendant's Reply regarding its Motion for Summary Judgment, Defendant also filed an declaration from its Director of Event Technologies, Steve Padgett ("Padgett"). (Padgett Decl., ECF No. 28). Plaintiff seeks to strike this declaration because it is "new evidence newly-presented to this Court in a reply brief." (Mot. to Strike 3:10–11, ECF No. 29).  Plaintiff argues that two new factual assertions were made in Defendant's Reply (supported by Padgett's Declaration) that should be disregarded: (1) that Plaintiff "was responsible for 'negotiating and managing client accounts,'" and (2) that "Account Executives like [Plaintiff] spend 80-85% of their time negotiating and managing client accounts." (*Id.* 4:15–16, 5:3–4).  Defendant responds that it is "not raising new arguments" because in its original Motion, it argued that "Plaintiff's primary duty was managing and negotiating contracts . . . [and] Padgett's declaration goes to that argument only." (Def. Resp. to Mot. to Strike 3:7–10, ECF No. 31).  Plaintiff replies that "[i]f the [Padgett] Declaration were merely re-iterating the evidence Defendant previously provided in its moving papers, . . . then this new affidavit would have been superfluous." (Pl. Reply to Mot. to Strike 3:2–4, ECF No. 32).  District courts may disregard arguments first raised in a reply brief because the timing of the argument deprives the opposing party of the opportunity to respond. *See, e.g.*, *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).  However, in a reply, a party may use evidence to rebut evidence presented in an opposition to a motion for summary judgment. *See, e.g.*, *E.E.O.C. v. Creative Networks, LLC*, No. CV-05-3023-PHX-SMM, 2008 WL 5272780, at *2 (D. Ariz. Dec. 15, 2008).  Here, the Court finds that Padgett's Declaration did not bring up new arguments, but rather supported

For the reasons discussed below, the Court denies both Motions for Summary Judgment.

## I.   BACKGROUND

This case arises out of a wage dispute between Defendant employer and Plaintiff former employee. Defendant is a company that provides audio-visual ("AV") products for conventions and conferences at Las Vegas hotels. Plaintiff worked as an Account Executive for Defendant from June 2012 to May 2015. (Compl. ¶¶ 7, 8, ECF No. 1). During this time, Plaintiff was classified as an exempt employee for purposes of the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. Plaintiff alleges that this classification was inaccurate based on her job duties, and she seeks back-pay for the many hours above forty that she allegedly worked each week while employed as an Account Executive for Defendant. (*Id.* ¶¶ 9–13). Plaintiff also seeks an additional thirty days' wages as a penalty for Defendant's alleged violation of NRS § 608.040, which requires employers to pay all wages due at the time an employee resigns, quits, or is discharged. (*Id.* ¶¶ 17–21).

On June 15, 2015, Plaintiff filed her case in this Court. (*See* Compl.). On August 12, 2015, Defendant filed its Answer. (Answer to Compl., ECF No. 7). Then, on March 8, 2016, Plaintiff filed her Motion for Partial Summary Judgment (ECF No. 13), and the following day, Defendant filed its Motion for Summary Judgment (ECF No. 14). These cross-motions center on whether Plaintiff's prior job duties constitute an exempt or non-exempt classification for purposes of the FLSA overtime provision, specifically under the administrative employee exemption. Plaintiff argues that her position was "sales and service," "75 percent of her work was clerical in nature," with the "essential functions [as] . . . sales, data entry, securing contracts and collecting payments, setting up rooms for business meetings and shows, and even helping the hotel staff clean the room when turnaround times were too brief." (Pl. Mot. Partial

---

Defendant's original argument and rebutted the evidence presented in Plaintiff's Response. As such, the Court declines to strike Padgett's Declaration, and Plaintiff's Motion to Strike is denied.

Summ. J. ("Pl. MPSJ") 4:23–5:10, ECF No. 13).  Defendant contends that Plaintiff "negotiated contracts with clients on behalf of [Defendant] with no prior authorization or approval needed[,] and that 75% of her time as an Account Executive was spent managing client contracts where she would investigate matters and respond to client's requests and proposed changes to the contract." (Def. Mot. Summ. J. ("Def. MSJ") 2:16–20, ECF No. 14).

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  Then, "the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.*  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the

moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

III.     **DISCUSSION**

    A.  FLSA Overtime Claim

The FLSA was created to provide a uniform national policy of guaranteeing compensation for all work or employment covered by the act. *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 741 (1981).  The FLSA grants individual employees broad access to the courts and permits an action to recover minimum wages, overtime compensation, liquidated damages, or injunctive relief. *Id.* at 740.

However, the overtime provision of the FLSA does not apply to "any employee employed in a bona fide executive, administrative, or professional capacity . . . (as such terms are defined and delimited from time to time by regulations of the [s]ecretary)." 29 U.S.C. § 213(a)(1).  The regulations clarify that an "employee in a bona fide administrative capacity" refers to an employee that is:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200.

"Because the FLSA is to be liberally construed to apply to the furthest reaches consistent with congressional direction, FLSA exemptions are to be narrowly construed against employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit." *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124–25 (9th Cir. 2002) (internal quotation marks and citations omitted).  An "employer who claims an exemption from the FLSA has the burden of showing that the exemption applies." *Id.* at 1124 (quoting *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983)).  Whether a plaintiff's activities make her

exempt from the overtime benefits of the FLSA is a question of law. *See id.* (citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)). Plaintiff's actual job responsibilities and how her working time was allocated are questions of fact. *See id.*

First, the Court notes that neither party disputes element one as to Plaintiff's salary meeting the FLSA exemption threshold. Plaintiff's initial annual salary of $40,000 clearly exceeds the minimum $455 per week as required for the administrative exemption. (Offer Letter, Ex. 2 to Def. MSJ, ECF No. 14). Next, the Court will examine the other two elements.

*1. Management or General Business Operations*

As for the second element of primary duty directly related to management or general business operations, the federal regulations explain:

> (a) To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers. The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.
>
> (b) Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. . . .
>
> (c) An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.

29 C.F.R § 541.201. While the category of work "related to the general business operations of the employer" is easily discernible in a manufacturing or retail businesses, it is rather

ambiguous in companies focused on providing services. This requirement is met, though, if the employee engages in "running the business itself or determining its overall course or policies," not just in the day-to-day carrying out of the business' affairs. *Bratt v. City of Los Angeles*, 912 F.2d 1066, 1070 (9th Cir. 1990).

Here, out of the list described in 29 C.F.R § 541.201(b), Defendant argues that Plaintiff was involved in both "quality control" and "budgeting." (Def. MSJ 9:23–27). First, Defendant asserts that Plaintiff was "responsible for quality control with regard to the client" because she managed the "client's accounts." (*Id.* 4:15–17). Indeed, Plaintiff answered in the affirmative when asked by Defendant in her deposition: "So would you say that, when you say to make sure a client's needs are met, that that involves quality control?" (Pl. Dep. 95:9–12, Ex. 2 to Pl. MPSJ, ECF No. 13-2).[2] Nevertheless, the Court is unconvinced that "quality control" means meeting clients' needs. "Quality control" is defined as "an aggregate of activities (such as design analysis and inspection for defects) designed to ensure adequate quality especially in manufactured products." Merriam-Webster Dictionary, *Quality Control*, http://www.merriam-webster.com/dictionary/quality-control (last visited Mar. 7, 2017).[3] In other words, quality control requires evaluation to ensure the quality standard is met, rather than actually delivering a service, as Defendant seeks to use the term.

Defendant also asserts that Plaintiff was "responsible for budgeting on shows and ensuring show costs came within the client's budget." (Def. MSJ 9:26). Plaintiff's deposition supports this assertion, as Plaintiff agreed that "prepar[ing] a budget for a show" was "part of the contract proposal," and she was then "responsible for managing that budget or contract after it was executed." (Pl. Dep. 134:15–22). However, Defendant does not contend that

---

[2] Plaintiff's Deposition was included as an exhibit to both parties' motions. The Court refers here to the one attached to Plaintiff's Motion for Partial Summary Judgment because it is a complete copy of the deposition, while Defendant's version includes only excerpts. However, it the Court's understanding that these documents are identical in the common portions included.

[3] Neither the regulations nor Black's Law Dictionary define "quality control."

"budgeting" was Plaintiff's primary duty; rather, Defendant argues that Plaintiff's primary duty was "managing [Defendant's] contracts with its clients from beginning to end." (Def. MSJ 9:19–20). As such, Defendant's assertion that Plaintiff's primary duty was "quality control" or "budgeting" is insufficient to demonstrate that Plaintiff's primary duty is directly related to Defendant's general business operations.

Nevertheless, Defendant's failure to demonstrate that Plaintiff's job duties fit within the § 541.201(b) categories is not necessarily conclusive, as the regulation specifically states that these examples are not all-inclusive. Further, the other subsections of § 541.201 provide additional guidelines, including that the "employee must perform work directly related to assisting with the running or servicing of the business," under § 541.201(a), and "employees acting as advisers or consultants to their employer's clients or customers . . . may be exempt," under § 541.201(c).

Both parties use Plaintiff's deposition to emphasize different aspects of Plaintiff's job. First, Plaintiff described her position as "75 percent" clerical in nature, "primarily data entry" and "filing." (Pl. Dep. 206:6–14). Plaintiff further explained that her job was sales, specifically "identify[ing] sales opportunities from hotel leads." (*Id.* 64:1–3). Additionally, as an Account Executive, Plaintiff would "secure contracts and payments," "help set up rooms," and occasionally assist with "clean[ing] a room . . . [if] it was a quick turnaround." (*Id.* 65:3–24). On the other hand, Defendant emphasizes that Plaintiff was the client's "point person" (*id.* 107:10–14), giving them recommendations regarding the equipment they might need (*id.* 115:3–18), estimating labor (*id.* 116:10–25), and negotiating the contract (*id.* 118:5–16, 135:11–136:17). Defendant also stresses that Plaintiff could financially bind Defendant to contracts ranging from $2,000 to $500,000, and she "influence[d] the success of [Defendant]." (*Id.* 108:3–8, 126:13–16, 135:5–10).

At one point in her deposition, Plaintiff agreed that 75 percent of her job was clerical in nature (Pl. Dep. 206:6–8), but at another point, she agreed that 75 percent of her job involved managing accounts (*id.* 122:21–123:7). Defendant emphasizes that Plaintiff spent this time "making a proposal, . . . [and] dealing with questions from the client, [including] change orders." (*Id.*). However, Plaintiff explains that these duties required to manage her accounts mainly involved entering data into Defendant's system called "EMS," which then generated a form contract that included pre-set prices. (*Id.* 206:1–14). Defendant also provides a declaration from Plaintiff's former boss stating, "Account Executives like [Plaintiff] spend 80-85% of their time negotiating and managing client accounts." (Padgett Decl. 5:3–4).

As such, the Court finds that there remains a material question of fact as to Plaintiff's actual job responsibilities. *See Bothell*, 299 F.3d at 1124–25. It matters to the outcome of the case whether Plaintiff spent most of her time on sales and clerical duties or most of her time managing accounts on behalf of Defendant. *See Anderson*, 477 U.S. at 248. If her duties were predominantly sales and clerical, then she was just involved with the day-to-day carrying out of the business' affairs, which would not be exempt. *See Bratt*, 912 F.2d at 1070. However, if her duties were predominantly managing accounts, then she was performing work directly related to running the business itself. *See id.* Accordingly, the Court finds that a genuine issue of material fact remains as to element two of the administrative exemption.

*2. Discretion and Independent Judgment*

Despite finding a genuine issue of material fact as to the second element, the Court still finds it necessary to examine the third element of whether Plaintiff's primary duties included the use of discretion and independent judgment. With regard to the use of "discretion and independent judgment," the federal regulations provide specific guidance as to several factors to consider. The Court specifically notes that these are non-exhaustive factors that need not all be met:

(b) The phrase "discretion and independent judgment" must be applied in the light of all the facts involved in the particular employment situation in which the question arises. Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

(c) The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. Thus, the term "discretion and independent judgment" does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review.

29 C.F.R. § 541.202.

Applying these regulations to the facts of this case, it is clear that Plaintiff exercised discretion and independent judgment. Several of the § 541.202(b) factors are applicable here. First, as to "whether the employee performs work that affects business operations to a substantial degree," Plaintiff agreed that her job had a "substantial impact financially on [Defendant]," and she "influence[d] the success of [Defendant]." (Pl. Dep. 126:4–16). Second, as to "whether the employee has authority to commit the employer in matters that have significant financial impact," Plaintiff could financially bind Defendant to contracts ranging from $2,000 to $500,000. (*Id.* 108:3–8, 135:5–10). Third, as to "whether the employee has authority to negotiate and bind the company on significant matters," Plaintiff explained that she

could negotiate with the client regarding the cost of labor and equipment, the only two aspects in the contract. (*Id.* 118:8–16). Fourth, as to "whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances," Plaintiff responded to and resolved clients' complaints. (*Id.* 129:9–130:3, 131:14–132:9). Further, under § 541.202(c), Plaintiff had authority to make "independent choice[s], free from immediate direction or supervision" by negotiating and managing the contracts without assistance or approval. (*Id.* 115:13:17, 123:18–25, 125:8–12).[4] As such, the Court finds that Defendant sufficiently demonstrated that Plaintiff's job qualified under the administrative exemption's third element.

However, as the Court found that a genuine issue of material fact remains as to Plaintiff's actual job responsibilities relevant to element two, the Court finds that neither party has met its burden under the summary judgment standard. Accordingly, the Court denies both Motions for Summary Judgment as to Plaintiff's FLSA overtime claim.

**B. NRS § 608.040(1)(b) Claim**

Nevada law provides a penalty on employers for failing to pay a discharged or quitting employee:

> If an employer fails to pay: [o]n the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at

---

[4] There appears to be a fact question as to whether Plaintiff had the "authority to waive or deviate from established policies and procedures without prior approval" because the parties have presented contradicting evidence regarding Plaintiff's discretion regarding discounts for clients. Plaintiff stated during her deposition that she could "deviate from pricing if it was in [the client's] contract with the hotel to give them both a percentage off." (Pl. Dep. 209:13–16). However, Defendant asserts that Plaintiff actually "had the discretion to offer discounts over and above what the master contract called for." (Def. Resp. to Pl. MPSJ 3:7–8, ECF No. 19). Defendant attached a master contract between Caesars Palace and one of Defendant's clients, indicating a twenty-five percent discount allowed (Master Contract Example, Ex. B to Def. Resp., ECF No. 19-1), along with a Final Contract allegedly between that client and Defendant for a show in which Plaintiff gave the client a fifty percent discount (Final Contract, Ex. C to Def. Resp., ECF No. 19-1). Plaintiff responds that the client "has not ever been identified for [Plaintiff] to respond." (Pl. Reply 6:7–8, ECF No. 24). However, the Court finds that this fact is not material to the determination of this element because several other factors sufficiently demonstrated that Plaintiff's primary duties included the use of discretion and independent judgment. *See Verkuilen v. MediaBank, LLC*, 646 F.3d 979, 983 (7th Cir. 2011).

    the same rate from the day the employee resigned, quit or was discharged until paid or for 30 days, whichever is less.

Nev. Rev. Stat. § 608.040(1)(b).  Plaintiff alleges in her Complaint that because Defendant "failed to properly compensate [her] for all overtime work as required by law, [Defendant] did not pay [Plaintiff] all of the wages and compensation due and owing" upon termination of her employment. (Compl. ¶ 18).

    In Defendant's Motion, it argues that NRS § 608.040 does not provide a "private right of action." (Def. MSJ 14:1–15:19).  However, the Nevada Supreme Court has specifically rejected this argument and found that NRS § 608.040 provides a private right of action because the "legislative scheme is consistent with a private cause of action for employees." *Csomos v. Venetian Casino Resort, LLC*, Case No. 55203, 2011 WL 4378744, at *2 (Nev. Sept. 19, 2011); *see also Lucatelli v. Texas De Brazil (Las Vegas) Corp.*, Case No. 2:11-cv-01829-RCJ-VCF, 2012 WL 1681394, at *3 (D. Nev. May 11, 2012).

    Nevertheless, this second claim is clearly dependent upon Plaintiff's success in her first claim. (*See* Pl. Resp. to Def. MSJ 23:23 – 25, ECF No. 17) (Plaintiff's "right to a statutory penalty under NRS 608.040 does not arise unless she first can prove that she is entitled to overtime compensation.").  Because the Court found that a genuine issue of material fact remains as to Plaintiff's first claim, there can be no resolution at this time as to Plaintiff's second claim.

### IV.   CONCLUSION

    **IT IS HEREBY ORDERED** that both Plaintiff and Defendant's Motions for Summary Judgment (ECF Nos. 13, 14) are **DENIED**.

    **IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike (ECF No. 29) is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall file their Joint Pretrial Order by April 14, 2017. Additionally, pursuant to District of Nevada Local Rule 16-5, this case is **REFERRED** to Magistrate Judge C.W. Hoffman for a settlement conference.

**DATED** this ___14___ day of March, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court